IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CATHY EVINS, | ) | CASE NO. 1:07 cv 3564 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Cathy Evins' application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

I. **PROCEDURAL HISTORY**

On April 20, 2004, Plaintiff filed an application for Supplemental Security Income benefits, alleging a disability onset date of April 12, 2004 due to limitations related to hip, shoulder, and back pain.  On June 30, 2006, Administrative Law Judge ("ALJ") Peter Belli

1

determined Plaintiff had the residual functional capacity ("RFC") to perform her past relevant work as a housekeeper and office cleaner and, therefore, was not disabled (Tr. 25). On appeal, Plaintiff claims the ALJ's determination is not supported by substantial evidence.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Born on May 11, 1954 (age 52 at the time of the ALJ's determination), Plaintiff is an "individual closely approaching advanced age." *See* 20 C.F.R. §§404.1563, 416. 963.  Plaintiff last completed the eleventh grade and has past relevant work as a hotel and office cleaner (Tr. 265-66).

### B.  Medical Evidence

In June 2003, Plaintiff began a series of physical therapy sessions for vocational rehabilitation (Tr. 179-80).  Plaintiff presented with "lumbar flexion limitation," and it was noted that although her potential for improvement was good, she had very poor compliance in the past (Tr. 179).  Thus, "outcome and goals [were] secondary to compliance issues" (Id.).

Plaintiff had her last physical therapy session in September 2003.  The physical therapist noted that Plaintiff had been reluctant in attempting to progress with her program (Tr. 130).  The physical therapist also noted that Plaintiff's cardiovascular endurance had been hampered by her reported asthma, yet she had not filled her prescription for her medication (Id.).  The physical therapist recommended that Plaintiff begin job training designed for her return to the occupation of custodian/housekeeper (Tr. 131).  The physical therapist felt that Plaintiff could get back on track and support herself if she could tolerate the small aches and pains associated with any job (Id.).

From January 2004 through October 2004, Plaintiff saw Cheryl Katz, M.D., about once a month (Tr. 192-204).  At an April 2004 visit, Dr. Katz noted that although Plaintiff had increased pain, she was using her medications and was experiencing some relief (Tr. 202).  Dr. Katz also indicated that Plaintiff had not gotten into any type of rehabilitation or career training program despite the fact that Dr. Katz had requested it for Plaintiff "months ago" (Id.).  However, Plaintiff had gone through physical therapy and work conditioning (Id.).

At a May 2004 visit, Plaintiff reported that she was suffering from quite a bit of pain despite medication (Tr. 201).  On examination, she had significant tenderness in her lower back, mild spasm without guarding, and decreased range of motion (Id.).  However, she had normal motor and sensory function in both lower extremities (Id.).  Plaintiff was advised to continue her regular medication and follow-up in one month (Id.).

Plaintiff saw Samson Ballesteros, M.D., in June 2004 (Tr. 221-22).  Plaintiff complained of pain in her left shoulder, the knuckles in her left hand, and the back of her leg (Id.).  Plaintiff rated her pain at a 6 out of 10 (Tr. 221).  On examination, Dr. Samson found tenderness in Plaintiff's cervical muscles (Tr. 222).  Dr. Samson assessed cervical degenerative joint disease (Id.).

State agency physician Walter Holbrook, M.D., reviewed Plaintiff's medical records and completed a physical Residual Functional Capacity ("RFC") assessment in June 2004 (Tr. 186-90).  Dr. Holbrook indicated that Plaintiff could lift, push, pull, and/or carry up to 50 pounds occasionally and 25 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; and sit up to 6 hours (Tr. 187).  Dr. Holbrook noted Dr. Katz's findings that Plaintiff had difficulty standing straight, bending over, with stiffness and numbness in her left hand and elbow, left hip

3

and left leg pain, and guarding in the upper and lower extremities (Tr. 187-88). Dr. Holbrook reported that Plaintiff's allegations were credible, her symptoms were attributable to a medically determinable impairment, and that the severity of her symptoms and its effect on function were consistent with the total medical and non-medical evidence (Tr. 190). In October 2004, state agency physician W. Jerry McCloud, M.D., affirmed Dr. Holbrook's determination and physical RFC assessment (Id.).

In July 2004, Plaintiff reported that her pain was never fully gone, but was fairly well-controlled (Tr. 200). Plaintiff was undergoing physical therapy, but not specifically for her back (Id.). Plaintiff had generalized tenderness in her lower back with minimal spasm and no guarding (Id.). She also had slightly decreased range of motion, but normal sensory and motor function in both lower extremities (Id.).

In August 2004, Dr. Katz noted that Plaintiff was still complaining of pain and muscle spasms (Tr. 199). However, Plaintiff was not taking her medication "quite like [Dr. Katz] recommended" (Id.). Plaintiff stated that she did not feel she could go back to work (Id.). After Plaintiff returned home from the appointment, she called Dr. Katz's office and demanded physical therapy for her back (Id.). Dr. Katz explained that she had already gone through a course of physical therapy and the next step should be a return to work or rehabilitation program (Id.). According to Dr. Katz, Plaintiff "[refused] this and hung up" (Id.).

In September 2004, Dr. Katz reported that Plaintiff had recently been evaluated at the Cleveland Clinic and was found to have difficulty performing sedentary activities (Tr. 192-93). Dr. Katz noted Plaintiff's complaints of constant pain and stiffness throughout her back, which felt worse in the morning, after any prolonged activity, or with the onset or persistence of cold

and damp weather (Tr. 192). On examination, Plaintiff had tenderness to palpation with spasm and guarding overlying the lumbosacral spine and paraspinal muscles (Id.). Plaintiff had some loss of normal lumbar lordosis and restricted ranges of motion in flexion, extension, lateral bending, and rotation (Tr. 192-93). Dr. Katz noted that physical therapy had been restarted, but that Plaintiff was having difficulty keep up with the requested demands (Tr. 193). Dr. Katz concluded that due to the length of time Plaintiff had undergone rehabilitation without much successful improvement, it was unlikely that she would be able to return to her previous job duties (Id.).

At an October 2004 appointment with Dr. Katz, Plaintiff complained of quite a bit of pain and reported that she had stopped using one of her medications after hearing on the news that it was going to be discontinued (Tr. 197). Plaintiff had mild tenderness and mild spasming in her low back, but no guarding (Id.). Plaintiff had decreased range of motion, but normal sensory and motor function in both lower extremities (Id.). Plaintiff saw Dr. Katz again in March, June, and August 2005. At these visits, Plaintiff had lower back tenderness and decreased range of motion but no guarding, and she had normal motor and sensory function in both of her legs (Tr. 232-34).

In November 2004, Plaintiff underwent an MRI of her neck, which showed satisfactory alignment of the cervical spine without evidence of significant canal stenosis, cord compression, or focal abnormality of cord signal (Tr. 212). There was a non-specific finding of a subtle increase in signal involving a vertebral body, so a bone scan was recommended (Id.). The bone scan, taken in December 2004, showed no abnormal activity in the right shoulder, but decreased density of hard and soft tissues, which appeared "to be degenerative process" probably from post-traumatic degeneration (Tr. 206-07).

Plaintiff saw Dr. Ballesteros in March and July 2005 and at both visits, Dr. Ballesteros noted no significant changes since the prior appointments (Tr. 236, 238).  Plaintiff rated her pain at a 7 out of 10 in March (Tr. 238-39).  Plaintiff was diagnosed with degenerative joint disease of her left shoulder based on the bone scan and x-ray studies (Tr. 239).  In July, Plaintiff reported that she had experienced an exacerbation of her left shoulder pain after picking up a heavy shopping bag (Tr. 236-37).  Dr. Ballesteros noted that she had pain in the area of her left shoulder, continued her medications, and added a prescription for Naprosyn (Tr. 237).

In October 2005, Dr. Katz completed a Medical Source Statement for Plaintiff and opined that Plaintiff could lift and/or carry up to 20 pounds occasionally and 15 pounds frequently; stand/walk for 1.5 hours in an 8-hour workday for no more than 20 minutes at a time; and sit for 1.5 hours total for no more than 20 minutes at a time (Tr. 240-43).  Dr. Katz noted that Plaintiff would need additional breaks during an 8-hour workday because she could not tolerate more than 1.5 hours of activity (Tr. 241).  Dr. Katz also indicated that she had prescribed a cane, a brace, and a TENS unit (Id.).

### C. Hearing Testimony

Plaintiff testified at her administrative hearing that her 2-year-old granddaughter lives with her and that she is the child's primary caretaker (Tr. 262-63).  Sometimes Plaintiff cooks food for her granddaughter and herself and at other times her daughter prepares meals (Tr. 269). Plaintiff indicated that she is able to dress, bathe, and groom herself, but that she does not do laundry or make beds (Tr. 269-71).  Plaintiff testified that she does not use any canes, braces, or other back or leg supports (Tr. 274).  She is able to grocery shop and takes walks as far as 6 blocks (Tr. 274, 280).  During the day, Plaintiff does exercises prescribed by her doctor and

alternates between taking walks and laying down (Tr. 277, 280-84). Plaintiff reported that she has back pain traveling into her left hip and leg, and neck and left shoulder pain that sometimes interrupts her sleep (Tr. 277-78, 283).

### III. DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court

would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

Plaintiff claims the ALJ erred in his treatment of the opinion of Plaintiff's treating physician Dr. Katz. Dr. Katz opined in October 2005 that Plaintiff can lift 15 pounds frequently and 20 pounds occasionally, and can stand/walk or sit for 20 minutes at a time up to 1.5 hours in an 8-hour workday (Tr. 240-41). Specifically, Plaintiff argues the ALJ failed to consider the factors set forth in 20 C.F.R. § 404.1527(d)(2)-(6) as required and provide good reasons for rejecting Dr. Katz's opinion.

The opinions of treating physicians are afforded greater weight than those of physicians who have examined the claimant on consultation or who have not examined the claimant at all. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). Nonetheless, a statement by a physician whether a claimant is disabled or unable to work is not controlling. *See* 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1). In addition, a treating physician's opinion may be afforded little weight if the Plaintiff fails to show her impairments

are supported by contemporaneous, objective clinical or diagnostic findings. *See Ladwig v. Comm'r of Soc. Sec.,* No. 00-6585, 2002 WL 1491872 (6th Cir. July11, 2002) (unpublished); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 538 (6th Cir. 1993); *Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Indeed, the ALJ is not required to credit a treating physician's opinion that is inconsistent with the objective medical evidence or to give substantial weight to a treating physician if his opinion is a mere conclusory statement, unsupported by clinical and/or diagnostic findings. *See Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Kirk*, 667 F.2d 538.

Although the regulations ensure an ALJ is not bound by the opinion of a claimant's treating physician, if he chooses to reject said opinion, the ALJ must articulate a good reason for doing so. *See Shelman*, 821 F.2d at 321. Specifically, if a treating source is not accorded controlling weight, the ALJ must apply certain factors – the length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source. 20 C.F.R. § 404.1527(d)(2). Even still, the reasons offered for a credibility determination need not only comply with these factors, they must also be "good." *Id.*; *see also Wilson*, 378 F.3d at 545. Courts have consistently remanded Commissioner's decisions when they have failed to articulate "good reasons" for not crediting the opinion of a treating source as required by 20 C.F.R. § 404.1527(d)(2). *Id.*; *see also Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000); *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

A review of the ALJ's written decision reflects that in evaluating Dr. Katz's opinion, the ALJ considered the factors set forth in 20 C.F.R. § 404.1527(d)(2)-(6) as required. The ALJ's

opinion notes that Dr. Katz provided records from January 2004 through August 2005, which is accurate (Tr. 19). The ALJ's opinion then discusses the findings from Dr. Katz's examinations, including Dr. Katz's April, July, and August 2004, and October 2005 examinations (Tr. 19-20). These findings included low back tenderness with spasms and decreased range of motion, but normal motor and sensory function in the lower extremities (Id.). Thus, the ALJ's opinion reflects that he considered all of the records provided by Dr. Katz, the length of Plaintiff's treatment relationship with Dr. Katz, the frequency of examination, and the nature and extent of the treatment relationship.

The ALJ's opinion also reflects that he considered the consistency and supportability of Dr. Katz's opinion. The ALJ noted Dr. Katz's April 2004 assessment and found that Dr. Katz did not provide any diagnosis or medical findings in this record to support her conclusory statements (Tr. 19). The ALJ also noted that while Dr. Katz opined that Plaintiff has been disabled since 2002, it did not appear that Dr. Katz treated Plaintiff until 2004 (Id.). According to the ALJ, this detail indicated that Dr. Katz was acting more as an advocate for the Plaintiff, rather than stating her opinion regarding Plaintiff's physical abilities (Id.). With respect to Dr. Katz's October 2005 opinion, the ALJ concluded that Dr. Katz appeared to be acting more as an advocate because her opinions were not supported by the medical findings of record (Tr. 24). The ALJ noted that Dr. Katz's treatment notes showed low back tenderness with spasms, decreased range of motion, and sleeping problems (Tr. 19). However, there was only mild straightening of the normal lordosis, minimal tenderness with minimal spasm, and no guarding (Id.). While Dr. Katz's records show periods of increased symptoms, she never noted evidence of neurological or sensory deficits, and at times, Plaintiff's symptoms improved (Tr. 24).

Moreover, Plaintiff's own reported activities, including raising her 2 year old grandchild and performing cooking, cleaning, shopping, and personal care, are inconsistent with Dr. Katz's determination that she cannot stand/walk or sit more than 1.5 hours per day (Id.).

Plaintiff argues that in evaluating Dr. Katz's opinion, the ALJ failed to discuss the bone scan and x-ray results, which revealed the degenerative process substantiating Plaintiff's neck and shoulder complaints. The bone scan results showed no abnormal activity in the right shoulder and focal increased uptake involving the inferior margin of the left glenohumeral articulation, most likely from post-traumatic degeneration (Tr. 206). It also showed findings that appeared to be degenerative process, probably post-traumatic (Tr. 207). However, the bone scan results were not specific as to the degree of degeneration, which undercuts Plaintiff's claim that the results substantiate her neck and shoulder complaints. Moreover, an MRI showed satisfactory alignment of cervical spine without significant canal stenosis, cord compression or focal abnormality, and no foraminal stenosis (Tr. 212). In support of his rejection of Dr. Katz's opinion, the ALJ explained that the MRI of Plaintiff's spine did not show any significant abnormality and did not support a determination that Plaintiff cannot perform even sedentary work (Tr. 24).

Plaintiff also argues that Dr. Katz's opinion is supported by the findings of Dr. Ballesteros. Although Dr. Ballestaeros indicated that he treated Plaintiff for degenerative joint disease, he did not provide any opinion as to the limitations imposed by this impairment. Dr. Ballesteros' records reflect that he found no findings of radiculopathy or neurological deficits in November 2003 and no significant changes in June 2004, and March and July 2005 (Tr. 221,

227, 236, 238). Thus, a review of the record demonstrates that the findings of Dr. Ballesteros do not necessarily support Dr. Katz's October 2005 opinion.

Based upon the above, the Court concludes that the ALJ considered the factors set forth in 20 C.F.R. § 404.1527(2)-(6) as required and reasonably rejected Dr. Katz's October 2005 opinion that Plaintiff cannot stand/walk or sit for more than 1.5 hours per day.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the decision of the Commissioner is AFFIRMED.

s/ Kenneth S. McHargh  
Kenneth S. McHargh  
United States Magistrate Judge

Date: June 18, 2008